RECORD NO. 13-1552

## IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

---

MARY E. BEASLEY,

Personal Representative for Estate of Darryl E. Beasley,

*Plaintiff-Appellant,*

v.

AARON BROWN, *et al.*,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

---

## RESPONSE BRIEF OF APPELLEES

---

William F. Etherington VSB # 14152)
Leslie A. Winneberger (VSB # 45040)
Beale, Davidson, Etherington & Morris, P.C.
701 E. Franklin Street, Suite 1200
Richmond, Virginia 23219
(804) 788-1500
(804) 788-0135 (facsimile)
wetherington@bealelaw.com
lwinneberger@bealelaw.com

*Counsel for Appellees*                                    July 3, 2013

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1552__      Caption: _Mary Beasley v. Aaron Brown, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Kenneth Kepley_____
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____4/29/2013_____

Counsel for: Kenneth Kepley _____

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____4/29/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

_____4/29/2013_____
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1552          Caption: Mary Beasley v. Aaron Brown, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Anthony Anderson
(name of party/amicus)

who is _____ appellee _____ , makes the following disclosure:
      (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____4/29/2013_____

Counsel for: Anthony Anderson_____

## CERTIFICATE OF SERVICE
****************************

I certify that on ____4/29/2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____4/29/2013_____
        (signature)                                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1552__        Caption: __Mary Beasley v. Aaron Brown, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Renee Brothers__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____4/29/2013_____

Counsel for: Renee Brothers

## CERTIFICATE OF SERVICE
****************************

I certify that on ____4/29/2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____        _____4/29/2013_____
        (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1552__    Caption: __Mary Beasley v. Aaron Brown, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Aaron Brown__
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____  Date: _____4/29/2013_____

Counsel for: Aaron Brown _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____4/29/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

_____4/29/2013_____
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1552__    Caption: __Mary Beasley v. Aaron Brown, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Wanda Henderson__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____       Date: _____4/29/2013_____

Counsel for: Wanda Henderson_____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____4/29/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

_____4/29/2013_____
(date)

# <u>TABLE OF CONTENTS</u>

**<u>Page(s)</u>**

CORPORATE DISCLOSURE STATEMENTS

TABLE OF AUTHORITIES                                            v

STATEMENT OF ISSUES                                            1

STATEMENT OF THE CASE                                         1

STATEMENT OF THE FACTS                                      1 – 11

SUMMARY OF ARGUMENT                                      11 – 12

STANDARD OF REVIEW                                          13

ARGUMENT                                                        13 – 18

    I.    The Trial Court Did Not Impermissibly Rely Upon Its          13 – 17
           Own Version of Disputed Facts in Granting Summary
           Judgment in Favor of Defendants

    II.   Defendants are Entitled to Qualified Immunity          17 – 18

CONCLUSION                                                      18

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                        **<u>Page(s)</u>**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106          13
    S.Ct. 2505 (1986)

*Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999)                16

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277,        12
    283 (4th Cir. 2004)

*Iko v Shreve*, 535 F.3d 225, 239 (4th Cir. 2008)                   13

*Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007)      12

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)             12

*Korb v. Lehman*, 919 F. 2d. 243 (4th Cir. 1990)                    17, 18

*Lee v. Clarendon*, 2011 WL 1740013 *3 (C.A.4 (Va.)                   12

*Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008)                13

*Scarbro v. New Hanover County*, 374 Fed.Appx. 366, 2010             15, 16
    WL 1252409 (4th Cir. 2010)

*Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89           13
    L.Ed.2d 251 (1986)


**<u>Statutes</u>**

§ 18.2 – 248                                                          1

42 U.S.C. § 1983                                                      1

## STATEMENT OF ISSUES

Whether there existed a genuine issue of material fact which would bar summary judgment in favor of the Defendants.

## STATEMENT OF THE CASE

Mary E. Beasley ("Co-Administrator" or "Plaintiff"), as Co-Administrator of the estate of Darryl Eugene Beasley ("Beasley" or "Decedent"), brought a 42 U.S.C. § 1983 claim against Renee Brothers ("Brothers"), Anthony Anderson ("Anderson"), Aaron Brown ("Brown"), Kenneth Kepley ("Kepley") and Wanda Henderson ("Henderson") (collectively "Defendants"), for violation of Beasley's constitutional right to be free from excessive force, alleging that these individuals caused Decedent's death by piling on him so that their collective weight suffocated the Decedent.  The Co-Administrator also brought pendent state claims for common law wrongful death and common law conspiracy.

Defendants filed a summary judgment motion on June 19, 2012.  After the opportunity for both sides to brief their respective arguments, the Court granted summary judgment in favor of Defendants on March 27, 2013.

## STATEMENT OF THE FACTS

1.     Beasley arrived at the Petersburg City Jail ("Jail") for processing following his arrest for violation of Va. Code § 18.2-248 by Petersburg Police

1

Officers Christopher Womack ("Womack") and James Aponte ("Aponte") on June 19, 2010.  (Joint Appendix ("JA") pgs. 22, 26 and 29)

2.      Brown, Anderson, Kepley, and Brothers were involved in the processing of Beasley on June 19, 2010.  (JA pgs. 22, 26, 29 and 32)

3.      Brown conducted the initial pat search on Beasley which involved patting down Beasley's outer clothing, removing items from his pockets, and having him remove his shoes, socks and belt.  (JA pg. 26)

4.      Brothers began filling out a medical form for Beasley based on answers he gave her.  (JA pg. 32)

5.      Anderson spoke with Womack in the hallway during Beasley's processing.  Womack advised Anderson that Beasley was suspected of having drugs hidden in his buttocks.  Anderson returned to the receiving area.  After Brown completed the pat down search, Anderson advised everyone to stop what they were doing, so that a strip search could be performed.  (JA pg. 22)

6.      Brothers stopped filling out the medical form when it was determined that a strip search should be performed immediately.  (JA pg. 32)

7.      Brown and Kepley accompanied Anderson into the property room to assist in a strip search of Beasley.  (JA pgs. 22, 26 and 29)

8.      Brothers remained in the receiving area while Anderson, Brown and Kepley took Beasley to the property room for a strip search.  (JA pg. 32)

9.      Anderson instructed Beasley to remove his clothing and Beasley complied.  Beasley followed additional instructions given by Anderson until such time as he was asked to turn around, place his hands on his buttocks, bend over and spread his cheeks.  Beasley did not comply despite being asked three times by Anderson.  (JA pgs. 23, 27 and 29)

10.     Beasley still would not comply and responded something to the effect that, "you just want to see my ass" and then took off running out of the property room.  As he ran, Anderson observed Beasley reach to his buttocks, remove something ("the item") and place it in his mouth. Anderson yelled out, "he's got something in his mouth!"  (JA pgs. 23, 27 and 30)

11.     Brothers overheard Anderson yell out something to the effect of "he put it in his mouth" and Brothers heard people running down the hallway.  (JA pg. 32)

12.     Brothers pushed the security gate button to allow Deputy Thaddeus Frye ("Frye") into the first floor hallway and Brothers grabbed leg restraints.  (JA pg. 33)

13.     Anderson, Kepley and Brown ran after Beasley down the first floor hallway.  As Brown was running, he heard Anderson say something to the effect that "he put something in his mouth."  Brown reached Beasley first, and wrapped his arms around Beasley's upper thigh area, took hold of his left arm and brought

3

him to the ground with assistance from Anderson and Kepley.  (JA pgs. 23, 27 and

30)

14.    Brothers proceeded down the hallway to where Beasley had been

brought to the floor and placed the leg restraints on Beasley while he lay on his

stomach on the floor.  (JA pg. 33)

15.    Beasley struggled initially and refused to spit anything out of his

mouth.  (JA pgs. 27 and 30)

16.    Anderson turned Beasley onto his side in a further attempt to get the

item out of his mouth.  At that time, Beasley appeared limp and Anderson rolled

him onto his back.  Brothers radioed the control center requesting that jail medical

staff and an ambulance be called.  Beasley was rolled onto his side again, and

Anderson tried to retrieve the item from Beasley's mouth without success.

Anderson rolled him onto his back and Anderson tried sweeping his mouth again.

Anderson also put his ear up to Beasley's mouth and nose to see if he could hear

breath sounds.  Anderson could not.  Anderson removed a breathing barrier from

an orange container hooked on his pants and unwrapped it.  (JA pgs. 23, 27, 30 and

33)

17.    After emergency medical services were contacted to respond to the

Jail, Henderson retrieved the necessary insurance information to provide to

members of the emergency medical services upon arrival to accompany Beasley to the hospital.  (JA pg. 35)

18.    Henderson also contacted the jail physician, Dr. Mark Militana, to advise him of the situation involving Beasley.  (JA pg. 35)

19.    Anderson placed the breathing barrier on Beasley's mouth and began rescue breathing.  As Anderson gave each breath, Anderson observed that Beasley's chest was not rising. Anderson tried repeatedly to sweep Beasley's mouth and clear his airway without success.  At some point foam came from Beasley's mouth, it was wiped away and someone handed Anderson another breathing barrier.  (JA pgs. 24, 27 and 30)

20.    Brothers assisted Anderson by holding Beasley on his side while Anderson attempted to remove an item from Beasley's mouth.  (JA pg. 33)

21.    Brothers knelt down next to Beasley and tried to get a pulse in the neck area.  Brothers tried to assist Anderson by positioning Beasley's head, because Beasley's chest was not rising during rescue breathing.  Brothers also radioed the control room to check on the status of the ambulance and sent Brown and Frye to check on its status at different times. Brothers continued to assist Anderson with Beasley until members of the Petersburg Fire Department ("Petersburg Fire") arrived.   (JA pg. 33)

22.    Kepley returned to the receiving area.  On his way, he confirmed with control that an ambulance had been called.  Kepley called Sheriff Crawford and Major Ferley Yerby to advise them of the situation.  Kepley remained in the receiving area to respond as necessary.  (JA pg. 30)

23.    Aponte relieved Anderson from rescue breathing, while Anderson held Beasley's head back.  Beasley's chest still was not rising.  Aponte stopped rescue breathing and Anderson put his hand in Beasley's mouth again to try to clear his airway without success.  Anderson resumed rescue breathing and also began doing chest compressions.  (JA pg. 24)

24.    Brothers asked Brown to get a blanket.  Brown complied.  The blanket was used to cover Beasley's genitals.  (JA pgs. 27 and 33)

25.    Brown also went to check to see if the ambulance had arrived.  (JA pg. 27)

26.    At some point, Brown relieved Petersburg Police Officer Pickering ("Pickering") with taking Beasley's pulse in his left wrist.  Frye later relieved Brown.  (JA pg. 27)

27.    Petersburg Fire responded to an emergency call from the Jail on June 19, 2010 for male unresponsive, not breathing.  Daniel Macaluso ("Macaluso"), David Mann ("Mann") and Jeff Ivey ("Ivey") were members of the crew that responded to that call.  (JA pgs. 37, 40 and 43)

28.    Petersburg Fire was the first of the first-responders to arrive at the scene at the Jail.  (JA pgs. 37, 40 and 43)

29.    When Petersburg Fire arrived, the crew members observed an adult black male, Beasley, lying naked and unresponsive in the floor of a hallway in the Jail.  (JA pgs. 37, 40 and 43)

30.    Mann and Ivey observed Anderson performing Cardiopulmonary Respiration ("CPR") on Beasley.  (JA pgs. 40 and 43)

31.    Once Petersburg Fire arrived, Anderson stepped back and they took over rescue efforts.  (JA pg. 24)

32.    Ivey was the Incident Commander on this call responsible for overseeing and managing the call.  (JA pg. 43)

33.    Ivey passed necessary equipment to Macaluso for airway management.  (JA pg. 44)

34.    Mann set up the Automated External Defibrillator ("AED"). Macaluso attached the AED pads to the patient's body.  The AED indicated "No Shock Advised."  No shock was administered.  (JA pgs. 37 and 41)

35.    Macaluso attempted to place an oropharyngeal into the patient's mouth, but was unsuccessful because of an unknown obstruction.  An obstruction could not be observed by looking into the patient's throat.  (JA pgs. 38 and 41)

7

36.    The crew from Petersburg Fire was trained in Basic Life Support ("BLS"), and therefore not authorized to utilize forceps to remove an obstruction that was not visible from examining the inside of a patient's mouth.  (JA pgs. 38 and 41)

37.    Macaluso set up the bag valve mask ("BVM") and attempted artificial respirations.  Macaluso could not see the patient's chest rise.  During this time, Mann was performing chest compressions.  (JA pgs. 38, 41 and 44)

38.    Emergency Medical Technicians ("EMTs") from Southside Virginia Emergency Crew, Inc. ("Southside") arrived soon thereafter.  Joe Grau ("Grau") was one of the EMTs on the crew from Southside.   (JA pgs. 38, 41, 44 and 46)

39.    When he arrived, Grau observed a black male, Beasley, laying in the floor of the hallway while firefighters from the Petersburg Fire attempted to resuscitate him with Cardiopulmonary Respiration ("CPR").  (JA pg. 46)

40.    Macaluso told Grau something to the effect that he was not getting a good airway.  (JA pgs. 38 and 46)

41.    Grau used a laryngoscope to check the patient's airway.  Grau said something to the effect that he found the problem.  He used long, curved forceps, known as McGill forceps, to retrieve the item, a plastic baggie containing a white substance, from the patient's throat.  The baggie was laying over the patient's glottis opening (vocal cords).  It was approximately the size of a golf ball.  Grau

put it on the ground to his right. Anderson placed the baggie into a glove held open by Brothers. Brothers returned the baggie to Anderson and he took it to the receiving area. (JA pgs. 24, 33, 38, 41, 44, 46 and 47)

42.     One must be trained as an EMT- Intermediate or EMT Paramedic in order to intubate a patient or to use the McGill forceps. Grau was an EMT Paramedic. (JA pgs. 46 and 47)

43.     Grau intubated the patient and, once the airway was established, Macaluso resumed giving the patient artificial respiration. (JA pgs. 38, 44 and 47)

44.     Jeff McPhearson ("McPhearson") of Southside started an IV. He handed the IV bag to Ivey to elevate. (JA pg. 44)

45.     Mann continued to do chest compressions until he was relieved by Ivey. After Ivey relieved Mann, Mann held an IV bag elevated. (JA pgs. 41 and 44)

46.     Ivey prepared the stretcher for transport of Beasley. (JA pg. 44)

47.     Once Beasley was put on the stretcher and placed in the ambulance, Macaluso had no further contact with Beasley. (JA pg. 38)

48.     Anderson traveled with Beasley in the ambulance and helped with chest compressions during the ride. (JA pg. 24)

49.     Mann resumed chest compressions in the ambulance on the way to Southside Regional Medical Center ("SRMC") with some relief from Anderson. (JA pg. 41)

50.     Grau accompanied the patient in the ambulance to SRMC.  After care was transferred to SRMC, Grau had no further contact with the patient.  (JA pg. 47)

51.     CPR and care for Beasley was transferred to SRMC.  (JA pgs. 41 and 47)

52.     After arriving at the hospital, Anderson remained with Beasley and was present when he was pronounced dead and removed to the morgue.  (JA pg. 24)

53.     Deborah Kay, M.D. ("Kay") served as the acting medical examiner for the City of Petersburg, Virginia on June 21, 2010.  (JA pg. 48)

54.     Kay performed an autopsy on Beasley on June 21, 2010.  (JA pg. 48)

55.     Kay found that the cause of Beasley's death was aspiration of a foreign object, specifically, a plastic bag.  (JA pgs. 48 and 52)

56.     Kay found the manner of Beasley's death to be an accident.  (JA pgs. 48 and 52)

57.     Kay found no significant trauma that could have caused or contributed to Beasley's death.  (JA pgs. 48 and 52)

10

58.    After care was transferred to SRMC, Ivey had no further contact with the patient.  (JA pg. 44)

59.    Henderson had no physical contact with Beasley on June 19, 2010. (JA pg. 35)

60.    A series of still photographs were taken during the incident which were combined to create video-like footage (the "video").  (JA pg. 58 and Supplemental Joint Appendix ("SJA"), Vol. 2)

61.    A still taken from the video footage with time stamp 20:59:33 shows three individuals.  (SJA, Vol. 1, pgs. 1, 2 and 3).  One individual is kneeling on the floor to the right of Beasley.  This individual is Anderson.  (SJA, Vol. 1, pgs. 3 and 4). One individual is laying on the floor to the left of Beasley.  This individual is Kepley.  (SJA, Vol. 1, pgs. 3 and 6).  One individual is in the middle and blocks the camera angle so that Beasley's body cannot be seen.  This individual is Brown. (SJA, Vol. 1, pgs. 3 and 8).

## SUMMARY OF ARGUMENT

Plaintiff's appellate argument is confined to whether the district court improperly granted summary judgment based on qualified immunity grounds. However, the district court actually found that summary judgment was appropriate because the evidence failed to establish that Defendants violated Beasley's constitutional rights.  The district court went on to explain that, "even if a violation

had occurred, the defendants' actions were not so unreasonable as to place them outside the scope of qualified immunity." Because Plaintiff does not contest the district court's finding that no constitutional violation occurred, the district court's grant of summary judgment in favor of the defendants should be affirmed. Even so, no material facts were in dispute that would require a different result for failure to establish a constitutional violation or upon qualified immunity grounds.

The undisputed evidence shows the Defendants were required to act quickly to gain control over an inmate who escaped from their control and had what they thought may be an illegal substance on his person. Their actions did not amount to excessive force. They were required to and did respond quickly in a high stress environment. Beasley's death resulted from his own actions in running away from the Defendants and swallowing the baggie.

## <u>STANDARD OF REVIEW</u>

This Court reviews a district court's summary judgment decision *de novo*. *See Lee v. Clarendon*, 2011 WL 1740013 *3 (C.A.4 (Va.)) (*citing Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007) (en banc) and *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 283 (4th Cir. 2004) (en banc)).

## **ARGUMENT**

### I.  **The Trial Court Did Not Impermissibly Rely Upon Its Own Version of Disputed Facts in Granting Summary Judgment in Favor of Defendants**

The mere existence of a factual controversy does not make summary judgment inappropriate.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986).  Rather, the factual dispute must be material and, whether those facts are material, depends upon substantive law.  *Id*.  In this case, a claim for excessive force by a pre-trial detainee is governed by the Due Process Clause of the Fourteenth Amendment.  *See Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008).  In order to prevail on such a claim, the pre-trial detainee, or in this case, the Co-Administrator of the pre-trial detainee, must show Defendants "inflicted unnecessary and wanton pain and suffering" upon the detainee.  *See Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *See also Iko v Shreve*, 535 F.3d 225, 239 (4th Cir. 2008).  This determination is made by analyzing, "the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  The facts necessary to weigh these factors would be material in determining whether summary judgment was appropriate.

13

Plaintiff argues that where Defendants' bodies were in relation to Beasley's body and whether they applied their collective body weight to Beasley's torso were contested, rendering summary judgment inappropriate. Plaintiff failed to provide any evidence that Defendants applied too much weight to Beasley's body, arguing instead that it was "possible" that this occurred. The video and the affidavits of all Defendants show the contrary. This evidence shows Brothers and Henderson were not involved in bringing Beasley to the ground. It also shows that Anderson, Brown and Kepley were not lying on top of or applying their full body weight to Beasley's torso.

Even so, where the Defendants' bodies were in relation to Beasley's body is not material to a summary judgment decision. It is clear from the video that some amount of force was necessary to subdue Beasley. Even when Anderson, Brown and Kepley applied some force to bring Beasley to the ground, Beasley continued to struggle against them on the floor. The medical examiner's report did not find any evidence of trauma to Beasley's body to suggest injuries other than his death caused by aspirating on the plastic baggie. Other than Plaintiff's speculation that too much weight may have applied to Beasley's torso, Plaintiff provides no disputed facts to support her theory.

The undisputed facts show that Beasley escaped the control of Anderson, Brown and Kepley during the course of the strip search. They also show that

Beasley swallowed a foreign object, a plastic baggie containing a white substance, described as the size of a golf ball.  They show that Anderson, Brown and Kepley acted quickly to regain control of Beasley and needed to use some application of force to gain this control.  Brown brought Beasley to the floor and Anderson and Kepley assisted Brown in attempting to subdue Beasley.  Anderson, Brown and Kepley were aware that Beasley had swallowed something.  Anderson repeatedly commanded Beasley to spit out the object without success.  Beasley initially struggled with the officers even after being brought to the ground.  He appeared to be clenching his jaw tighter when Anderson tried to force his mouth open to retrieve the baggie. The evidence also showed that the medical examiner found "no significant trauma that could cause or contribute to death."  She found his death resulted from aspirating on the plastic baggie.

There is no evidence that Anderson, Brown, Kepley or any of the other Defendants actions were taken for the purpose of causing Beasley harm.  Rather, they acted in a good faith effort to restore discipline by gaining control over an escaped pre-trial detainee with possible contraband in his mouth.  "[W]e must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'  *Scarbro v. New Hanover County*, 374 Fed.Appx. 366, 2010 WL 1252409

15

(4th Cir. 2010); *quoting Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999).  Even

if Anderson, Brown and Kepley did put their body weight on Beasley, which is

simply not borne out by the video or Defendants' descriptions of what happened,

Beasley put this incident in motion by running away from Anderson, Brown and

Kepley and refusing to spit out the foreign object in his mouth.  There is no

evidence that Anderson, Brown, Kepley or the other named defendants acted in a

malicious or sadistic manner for the very purpose of inflicting harm on Beasley.

Rather, Defendants were forced to act, and quickly, to restore order.  Beasley's

constitutional rights were not violated.

It should be noted that Plaintiff's Complaint alleged an excessive force claim

caused by Defendants collective weight on Beasley caused him to suffocate.

Plaintiff made no mention of Beasley swallowing a plastic baggie containing a

white substance in her Complaint.  It was not until this fact was pointed out in

Defendants' summary judgment brief that Plaintiff changed her theory to argue

that Defendants' actions amounted to excessive force because they piled on top of

Beasley knowing his airway was obstructed.  Even with this changed theory,

summary judgment was appropriate.

Plaintiff's reference to Mr. Middleton's declaration (JA pgs. 65-66) is

disingenuous.   A full reading of Mr. Middleton's declaration shows his opinions

focused on Defendants' emergency response efforts, or lack thereof, to Beasley's

16

obstructed airway. He expressed no opinion on excessive force. He does not

opine on the methods employed by Defendants to take Beasley down to the floor,

whether those methods amounted to excessive force, or whether the Defendants

were on top of Beasley's body during the course of the take-down.

## II.    Defendants are Entitled to Qualified Immunity

Even if the district court had found that the Co-Administrator's claim

amounted to a constitutional violation, the Defendants are protected by the doctrine

of qualified immunity. Whether qualified immunity applies can be decided in the

initial stages of litigation, before discovery, and independently of the Co-

Administrator's claims. See *Korb v. Lehman*, 919 F. 2d. 243 (4th Cir. 1990). The

*Korb* court explained:

> The central question in determining the issue of qualified immunity
> is whether or not the conduct of the government official violated
> "clearly established law," *i.e.*, the "'objective legal reasonableness'
> of [his] action ... assessed in light of the legal rules that were 'clearly
> established' at the time it was taken ...." "This is not to say that an
> official action is protected by qualified immunity unless the very
> action in question has previously been held unlawful ... but it is to
> say that in the light of pre-existing law the unlawfulness must be
> apparent." "[U]nder [this] test, an official may be entitled to
> immunity from suit even where he has violated a plaintiff's rights—if
> [those rights] were not then 'clearly established' or if a 'reasonable
> person' in the official's position could have failed to appreciate that
> his conduct would violate them." A court, in making the
> determination as to whether a constitutional right has been violated,
> should not look at the right at its most general level but at "its
> application to the particular conduct being challenged." If there
> exists a "legitimate question" as to whether particular conduct

17

violates a particular right then the right is not clearly established and qualified immunity applies.

*Korb*, *supra*, 919 F.2d at 247 (citations omitted). The Co-Administrator's allegations do not rise to the level of constitutional violation. If they did, attempting to subdue an inmate who escaped their control would not be a readily apparent violation of Beasley's right to be free from excessive force. Beasley ran out of the room where he was undergoing a strip search. Defendants had to gain control of the situation by bringing him to the floor and attempting to get Beasley to spit out suspected contraband. These actions would not be a readily apparent constitutional violation to the Defendants. The Defendants should be entitled to qualified immunity.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court to affirm the district court's ruling.

Respectfully submitted,

RENEE BROTHERS
ANTHONY ANDERSON
AARON BROWN
KENNETH KEPLEY
WANDA HENDERSON

By Counsel

18

_____/s/ Leslie A. Winneberger_____.
William F. Etherington (VSB # 14152)
Leslie A. Winneberger (VSB # 45040)
Beale, Davidson, Etherington & Morris, P.C.
701 E. Franklin Street, Suite 1200
Richmond, Virginia  23219-2503
(804) 788-1500
(804) 788-0135 (facsimile)
wetherington@bealelaw.com
lwinneberger@bealelaw.com

19

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e) or 32(a)(7)(B) because this brief contains 3,978 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Date: July 3, 2013

_____/s/ Leslie A. Winneberger_____.
William F. Etherington (VSB # 14152)
Leslie A. Winneberger (VSB # 45040)
701 East Franklin Street, Suite 1200
Richmond, Virginia 23219
(804) 788-1500
(804) 788-0135 (facsimile)
wetherington@bealelaw.com
lwinneberger@bealelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of July, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David Paul Morgan, Esquire
Cravens & Noll, P.C.
9011 Arboretum Parkway, Suite 200
Richmond, Virginia 23236
Counsel for Mary E. Beasley
Personal Representative for
Estate of Darryl E. Beasley

_____/s/ Leslie A. Winneberger_____.
William F. Etherington (VSB # 14152)
Leslie A. Winneberger (VSB # 45040)
701 East Franklin Street, Suite 1200
Richmond, Virginia 23219
(804) 788-1500
(804) 788-0135 (facsimile)
wetherington@bealelaw.com
lwinneberger@bealelaw.com